```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NORTH DAKOTA
                    NORTHWESTERN DIVISION


United States of America,    )
                             )
          Plaintiff,         )
                             )
     vs.                     )   File No. 4:14-cr-135
                             )
Terrance C. Jackson,         )
                             )
          Defendant.         )



             PARTIAL TRANSCRIPT OF SUPPRESSION HEARING




                         Taken at
                  United States Courthouse
                    Bismarck, North Dakota
                       July 1, 2015




           BEFORE THE HONORABLE DANIEL L. HOVLAND
           -- UNITED STATES DISTRICT COURT JUDGE --
```

## APPEARANCES

MR. RICK LEE VOLK
U.S. Attorney's Office
220 E. Rosser Ave
P. O. Box 699
Bismarck, North Dakota 58502-0699

                                                      FOR THE UNITED STATES

- - - - - - - - - -

MS. PENELOPE STRONG
Attorney at Law
2517 Montana Avenue
Billings, Montana 59101

                                                      FOR THE DEFENDANT

- - - - - - - - - -

## DEFENSE WITNESS

Terrance C. Jackson

   Direct Examination by Mr. Volk                 3
   Cross-Examination by Ms. Strong               9

- - - - - - - - - -

Certificate of Court Reporter - Page 17

- - - - - - - - - -

```
 1        (The above-entitled matter came before the Court, The
 2   Honorable Daniel L. Hovland, United States District Court
 3   Judge, presiding, commencing at 1:37 p.m., Wednesday, July 1,
 4   2015, in the United States Courthouse, Bismarck, North Dakota.
 5   The following partial proceedings were had and made of record
 6   in open court with the defendant present beginning at 3:18
 7   p.m., the same day.)
 8                      - - - - - - - - - - -
 9                       TERRANCE C. JACKSON,
10   having been first duly sworn, was examined and testified as
11   follows:
12                        DIRECT EXAMINATION
13   BY MS. STRONG:
14   Q.   Would you state your name for the record, please?
15   A.   Terrance Jackson.
16   Q.   Mr. Jackson, how old are you?
17   A.   Twenty-four.
18   Q.   Are you the defendant in this case?
19   A.   Yes.
20   Q.   I want to direct your attention to March 27, 2014.  Do you
21   recall when and where you were arrested on that date?
22   A.   Yes.
23   Q.   And do you recall the officer who arrested you?
24   A.   Yes.
25   Q.   And you've heard that officer testify in court here today
```

```
             1   earlier, correct?
             2   A.   Yes.
             3   Q.   I want to direct your attention to when he took you to the
             4   Gerald Fox Justice Center to book you in.  What's your
03:19        5   recollection of how long you remained in the car with him
             6   before you were booked or lodged into the jail?
             7   A.   For about 45 minutes to an hour.
             8   Q.   And where did he hold you at that time?
             9   A.   In front of the sally port in his car.
03:19       10   Q.   In his car.  Was there anyone else other than you and he
            11   in his squad car?
            12   A.   Neal Hale's son approached the vehicle and spoke to the
            13   officer.
            14   Q.   All right.  And who is Mr. Hale relative to the alleged
03:19       15   incident here?
            16   A.   Excuse me?
            17   Q.   Was Mr. Hale a witness?
            18   A.   Yes, ma'am.
            19   Q.   All right.  And did the officer have a conversation with
03:19       20   you while he had you in his squad car?
            21   A.   Yes.
            22   Q.   And could you briefly tell the Judge what he asked you
            23   about?
            24   A.   I said, "All this for a warrant?"  And he said, "This
03:20       25   ain't for a warrant.  This is for murder."  And he kept asking
```

```
          1   me where the knife was.
          2   Q.   And did you respond to him?
          3   A.   No.
          4   Q.   After you were booked into the jail later that evening on
03:20     5   March 27th, did officers request to meet with you?
          6   A.   Yes.
          7   Q.   And where did they take you?
          8   A.   Into an office.
          9   Q.   And how many officers were there to meet with you?
03:20    10   A.   Three.
         11   Q.   And did you know any of those officers?
         12   A.   No.
         13   Q.   Did they identify themselves to you?
         14   A.   Yes.
03:20    15   Q.   And did the one officer -- FBI Agent Coulter, was it he
         16   who testified previously today?
         17   A.   Yes.
         18   Q.   What was -- who was the first officer that spoke to you on
         19   that date, and what did they say to you?
03:20    20   A.   I believe it was Detective Bennett.
         21   Q.   And what did he talk to you about at first?
         22   A.   The warrant.
         23   Q.   And when you refer to "the warrant," can you be more
         24   specific?
03:21    25   A.   Probation violation warrant.
```

|       |    |    |                                                                 |
|-------|----|----|-----------------------------------------------------------------|
|       | 1  | Q. | And did he serve the warrant on you?                           |
|       | 2  | A. | He told me I had one.                                          |
|       | 3  | Q. | And what did you tell him?                                     |
|       | 4  | A. | I said, "I'd rather have an attorney present."                 |
| 03:21 | 5  | Q. | All right. And after that occurred, did the agents             |
|       | 6  |    | question you further?                                          |
|       | 7  | A. | Yes.                                                           |
|       | 8  | Q. | And who questioned you, and what was that about?               |
|       | 9  | A. | It was Agent Coulter.                                          |
| 03:21 | 10 | Q. | And what did he ask you about?                                 |
|       | 11 | A. | About my health.                                               |
|       | 12 | Q. | And can -- can you be more specific about the type of          |
|       | 13 |    | question he asked you about your health?                       |
|       | 14 | A. | He asked me to rate it from one to -- zero to ten.             |
| 03:21 | 15 | Q. | Now, at the time that he asked you that, were you seated       |
|       | 16 |    | in a particular position?                                      |
|       | 17 | A. | Yeah, I had my arms crossed and looked -- just looking at      |
|       | 18 |    | my legs.                                                       |
|       | 19 | Q. | Was there a reason that you were seated in that position?      |
| 03:22 | 20 | A. | I was stressed out.                                            |
|       | 21 | Q. | Okay. And after he asked you the question on rating your       |
|       | 22 |    | health, were there other questions about your health and how   |
|       | 23 |    | you felt?                                                      |
|       | 24 | A. | Yes.                                                           |
| 03:22 | 25 | Q. | Who asked those?                                               |

6

1  **A.**  Agent Coulter.
2  **Q.**  And can you tell the Court the specific questions you were
3  asked?
4  **A.**  He asked what kind of drugs I had been doing and how long
5  I'd been up.
6  **Q.**  All right.  And did you respond to those questions?
7  **A.**  Yes.
8  **Q.**  And were there any more questions about drug use at all?
9  **A.**  No.
10 **Q.**  After that series of questions, what did the agents talk
11 about or ask you about?
12 **A.**  Excuse me.  He did -- he asked me how I used it.
13 **Q.**  All right.  And when you mean -- when you refer to "he,"
14 which agent are you referring to, Mr. Jackson?
15 **A.**  Agent Coulter.
16 **Q.**  And did you respond to that question?
17 **A.**  Yes.
18 **Q.**  All right.  So after that series of questions about your
19 health and your drug use, what did they ask you about next?
20 **A.**  They asked me about -- they asked me about the events that
21 happened earlier that day.
22 **Q.**  All right.  But before they asked you about that, did they
23 ask you about giving a consent?
24 **A.**  No.
25 **Q.**  Okay.  So what did they -- who asked you about the events

7

```
              1   earlier that day?
              2   A.   Agent Coulter.
              3   Q.   And what did you tell him?
              4   A.   I'd rather have an attorney present.
03:23         5   Q.   All right.  And what was the next conversation that the
              6   agents had with you?
              7   A.   That they -- about the events that happened earlier that
              8   day.
              9   Q.   Okay.  And was there a conversation about you giving
03:24        10   consent to have your hands swabbed?
             11   A.   Yes.
             12   Q.   And who asked you about that?
             13   A.   Agent Coulter.
             14   Q.   And did you agree to have your hands swabbed?
03:24        15   A.   Yes.
             16   Q.   And how did you indicate to Agent Coulter that you would
             17   agree to do that?
             18   A.   I nodded my head.
             19   Q.   All right.  Did you do anything else?
03:24        20   A.   No.
             21   Q.   What did he instruct you to do after you nodded your head?
             22   A.   To show me -- show him my hands.
             23   Q.   And did you do that?
             24   A.   Yes.
03:24        25   Q.   All right. At the end of the interaction or the interview
```

1  with the agents, did Agent Bennett or Agent Coulter ask to
2  interview you about the events of the day one more time?
3  **A.**   Yes.
4  **Q.**   And which agent was it who asked you that, if you
5  remember?
6  **A.**   Agent Coulter.
7  **Q.**   And what did you tell him?
8  **A.**   I'd rather have an attorney present.
9  **Q.**   Did you say anything about your arrest warrant at that
10 time?
11 **A.**   No.
12        MS. STRONG:  I have nothing further for Mr. Jackson,
13 Your Honor.
14        THE COURT:  Mr. Volk.
15                    CROSS-EXAMINATION
16 BY MR. VOLK:
17 **Q.**   Mr. Jackson, if I understand your testimony correctly, you
18 are indicating that you told the agents three different times
19 that you wanted an attorney present?
20 **A.**   No, sir, two.
21 **Q.**   Okay.  The first time was right after being shown the
22 warrant?
23 **A.**   Yes.
24 **Q.**   What precisely did you say?
25 **A.**   I'd rather have an attorney present.

9

03:25  1  **Q.** That's it?
       2  **A.** Yes, sir.
       3  **Q.** Not for that warrant?
       4  **A.** Yes, sir. No, sir, just I'd rather have an attorney
       5  present.
       6  **Q.** And the second time that you said that you would rather
       7  have an attorney present was when?
       8  **A.** When he asked me about the events that happened earlier
       9  that day.
03:25 10  **Q.** And was that before or after you were requested to consent
      11  to search of your hands -- swabbing of your hands?
      12  **A.** That was after.
      13  **Q.** Okay. Had you used drugs that day?
      14         MS. STRONG: Your Honor, I'm going to object. I
03:26 15  think my client has a right to -- a Fifth Amendment right not
      16  to incriminate himself with regard to that particular question.
      17  That is distinct from what he told the agents on that date, and
      18  we're going to --
      19         THE COURT: Did you not open the door by asking
03:26 20  whether he had been asked about drugs he had been doing, and he
      21  answered the question, said that he had responded?
      22         MS. STRONG: With all due respect, I don't think so,
      23  Your Honor. It's a different set of questions, what he told
      24  the agents on that date versus the government now asking did he
03:26 25  do drugs on that day.

10

03:27    1            MR. VOLK:  Your Honor, it goes to Mr. Jackson's
         2    ability to perceive and accurately report the events of that
         3    night -- or of that interview, specifically.  If he had used
         4    drugs and was having the effects of drugs in his system, that
         5    goes directly towards his ability to perceive and report, so
         6    it's certainly relevant.  And if he is invoking his right to
         7    remain silent, I would ask that all of his testimony be
         8    stricken.
         9            THE COURT:  Ms. Strong.
03:27   10            MS. STRONG:  Your Honor, I believe under *U.S. versus*
        11    *Simpson*, an individual such as my client who is doing a
        12    suppression motion can testify without fear of incriminating
        13    themselves, but I believe that he -- I mean, it's a tricky
        14    thing because he could be prosecuted for further drug use.  It
03:27   15    is a critical evidentiary issue in this case, and he is going
        16    to assert his Fifth Amendment right, but I don't think that
        17    it's appropriate for the Court to strike all of his testimony
        18    in that regard, and if we need to do some briefing on the
        19    *Simpson* issue, I would be glad to do that.
03:28   20            But he and I -- that's going to be our position on
        21    his answering the question about drug use on that date.  What
        22    he told the officers, the agents on that date is different from
        23    did he actually use drugs.  Of course, it may be relevant, but
        24    he still can assert a Fifth Amendment right not to incriminate
03:28   25    himself.  It's a -- it pertains to something that would

                                       11

03:28

1  definitely incriminate him both in this case and a potential
2  new charge of possessing or accessing illegal drugs.
3           THE COURT:  Well, one of the questions you asked is
4  relative to Agent Coulter, and he said that Agent Coulter had
5  asked him to rate his health on a scale of one to ten.  And
6  then I believe your client said that he was also asked about
7  drugs that he had been doing or doing that day.  And then you
8  asked him, "Did you respond to that?"  And he said he did
9  respond.  So are you saying that he's refusing to answer any

03:29

10  further questions about what drugs he may have been doing or
11  doing that day, having opened the door to that line of
12  questioning?
13          MS. STRONG:  I didn't recall that I asked him about
14  that day.  The agents' notes and report indicate they asked him

03:29

15  about drug use prior to that day.
16          THE COURT:  Okay.  Is he willing to and are you going
17  to allow him to answer questions about what drugs he had been
18  doing or at least tell us how he responded to that question of
19  whether he had been doing drugs?

03:29

20          MS. STRONG:  I would allow him to relate his best
21  recollection as to what he told the agents, but not the
22  independent -- as the government asked, "What drugs did you
23  actually do on that date," referring again to March 27, 2014.
24  To that he would assert his Fifth Amendment right.

03:30

25          THE COURT:  So I'm interested in what his response

|    |    |
|----|----|
| 03:30 | 1  is, and then I'll decide what I'm going to do about Mr. Volk's
2  question. How did he respond to that question from Agent
3  Coulter about whether he had been doing drugs or words to that
4  effect?
5           MS. STRONG: Well, he did give a generic response |

1  is, and then I'll decide what I'm going to do about Mr. Volk's
2  question. How did he respond to that question from Agent
3  Coulter about whether he had been doing drugs or words to that
4  effect?
5           MS. STRONG: Well, he did give a generic response
6  about his use of the drug meth and how he uses it, but I -- my
7  recollection is he did not give a time period, but it might --
8  if there was a time period, it would have been prior to
9  March 27, 2014. That is what I believe the agents' report and
10  notes reflect.
11           THE COURT: Well, continue on, Mr. Volk. I'm going
12  to cerebrate on your question, and I may just simply give
13  counsel an opportunity to brief that issue or tell me what
14  cases they feel are relevant and support their position, but my
15  inclination is that the door has been opened slightly.
16           MR. VOLK: All right. Your Honor, I'll make an
17  effort to ask these questions appropriately.
18  Q.   (MR. VOLK CONTINUING) Mr. Jackson, did you tell the
19  agents that you slam and smoke methamphetamine during this
20  interview?
21  A.   Yes, sir.
22  Q.   Did you tell them -- did you use the words "fucked up" and
23  "I can't remember"?
24  A.   Yes, sir.
25  Q.   Did you feel like you were fucked up and under the

13

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | influence or under the influence during the course of this           |
|       | 2  | interview?                                                            |
|       | 3  | **A.**   No, sir.                                                     |
|       | 4  | **Q.**   You were completely fine from your physical health           |
| 03:32 | 5  | standpoint at that point in time?                                     |
|       | 6  | **A.**   Yes, sir.                                                    |
|       | 7  | **Q.**   You were not under the influence of anything?                |
|       | 8  | **A.**   No, sir.                                                     |
|       | 9  | **Q.**   Did you tell the officers you had been up since your         |
| 03:32 | 10 | birthday?                                                             |
|       | 11 | **A.**   Yes, sir.                                                    |
|       | 12 | **Q.**   Your birthday was March 22nd, is that correct?               |
|       | 13 | **A.**   Yes, sir.                                                    |
|       | 14 | **Q.**   And that interview took place on March 27th, is that         |
| 03:32 | 15 | right?                                                                |
|       | 16 | **A.**   Yes, sir.                                                    |
|       | 17 | **Q.**   So you had been up for five days straight?                   |
|       | 18 | **A.**   No, sir.                                                     |
|       | 19 | **Q.**   But that's what you told them.                               |
| 03:33 | 20 | **A.**   I got confused.                                              |
|       | 21 | **Q.**   Did you tell them the only sleep that you have had is the    |
|       | 22 | time you had slept just prior to that interview, while you were      |
|       | 23 | in the jail?                                                          |
|       | 24 | **A.**   Yes, sir.  Again, I got confused.                            |
| 03:33 | 25 | **Q.**   So you're saying today you had slept plenty, had plenty of  |

14

|       |    |    |                                                                       |
|-------|----|----|-----------------------------------------------------------------------|
|       | 1  |    | sleep from your birthday until the time of the interview?            |
|       | 2  | A. | Yes, sir.                                                             |
|       | 3  | Q. | You were not under the influence of anything, correct?                |
|       | 4  | A. | Yes, sir.                                                             |
| 03:33 | 5  | Q. | At the time of the interview?                                         |
|       | 6  | A. | Yes, sir.                                                             |
|       | 7  | Q. | And you felt perfectly fine physically.                               |
|       | 8  | A. | Yes, sir.                                                             |
|       | 9  | Q. | Then why did -- did you tell the officers that you rated              |
| 03:33 | 10 |    | your health at a three on a scale of one to ten?                      |
|       | 11 | A. | Why did I?                                                            |
|       | 12 | Q. | Did you?                                                              |
|       | 13 | A. | Yes, sir.                                                             |
|       | 14 | Q. | Why did you do that if you felt physically fine?                      |
| 03:34 | 15 | A. | Again, I was confused with the question.                              |
|       | 16 | Q. | Did you show your hands to Agent Coulter?                             |
|       | 17 | A. | Yes, sir.                                                             |
|       | 18 | Q. | But you didn't do that on your own?  He instructed you to             |
|       | 19 |    | do that?                                                              |
| 03:34 | 20 | A. | Yes, sir.                                                             |
|       | 21 | Q. | Is that your testimony?                                               |
|       | 22 | A. | Yes, sir.                                                             |
|       | 23 | Q. | Did you tell the officers you did not know when you had               |
|       | 24 |    | cut your hair last?                                                   |
| 03:35 | 25 | A. | Yes, sir.                                                             |

1  Q.   At that time you knew when you had last cut your hair,
2  isn't that right?
3  A.   Yes, sir.
4            MR. VOLK:  That's all the questions I have, Your
5  Honor.
6            THE COURT:  Anything else?
7            MS. STRONG:  I have nothing further, Your Honor.
8            (The partial testimony is concluded at 3:36 p.m., the
9  same day.)
10                    - - - - - - - - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

03:36

```
 1                    CERTIFICATE OF COURT REPORTER

 2           I, Sandra E. Ehrmantraut, a Certified Realtime

 3   Reporter,

 4           DO HEREBY CERTIFY that I recorded in shorthand the

 5   foregoing proceedings had and made of record at the time and

 6   place hereinbefore indicated.

 7           I DO HEREBY FURTHER CERTIFY that the foregoing

 8   typewritten pages contain an accurate transcript of my

 9   shorthand notes then and there taken.

10           Dated:   September 14, 2015

11

12                                  /s/ Sandra E. Ehrmantraut
                                    Certified Realtime Reporter
13
```